# EXHIBIT "B"

COMMONWEALTH OF MASSACHUSETTS
THE TRIAL COURT
SUPERIOR COURT DEPARTMENT

MIDDLESEX DIVISION

DOCKET NO.:

ANDRIA NEMODA,

Plaintiff,

v.

TOWN OF BURLINGTON, ROBERT MERCIER, individually and in his capacity as Town Administrator, SHARON WALKER MASTENBROOK, individually and in her capacity as Director of Public Health, CATHY PICCOLO, individually and in her capacity as Principal Clerk, EUGENE T. McSWEENEY, Individually, and in his capacity as Board of Health Chairman, DR. EDWARD WEINER, individually and in his capacity as Board of Health Vice Chairman, DR. CATHERINE READ, JAMES DION and DR. WAYNE SALTSMAN, individually and in their respective capacities as Board of Health Members, jointly and severally,

Defendants.

**COMPLAINT AND DEMAND FOR JURY TRIAL**

## PARTIES

1. Plaintiff Andria Nemoda (hereinafter "Nemoda"), is a natural person who resides in Salisbury, Massachusetts and who was employed as a Supervising Nurse by the Town of Burlington.

2. Defendant Town of Burlington is a municipal corporation located within the metes and bounds of the Commonwealth of Massachusetts.

3. Defendant Robert Mercier (hereinafter "Mercier"), is the Town Administrator of Burlington and is being sued in his individual and official capacities.

4. Defendant Sharon Walker-Mastenbrook (hereinafter "Mastenbrook"), is the Director of Public Health for Burlington and is being sued in her individual and official capacities.

5. Defendant Cathy Piccolo (hereinafter "Piccolo") is the Principal Clerk of the Burling Public Health Department and is being sued in her individual and official capacities.

6. Defendant Eugene T. McSweeney (hereinafter "McSweeney) is an elected member of the Burlington Board of Health, serves in the capacity of Chairman of that board, and is being sued in his individual and official capacities.

7. Defendant Dr. Edward Weiner (hereinafter "Weiner") is an elected member of the Burlington Board of Health, serves in the capacity of Vice Chairman of that board, and is being sued in his individual and official capacities.

8. Defendants Dr. Catherine Read, James Dion, and Dr. Wayne Saltsman, (hereinafter "Read," "Dion," and "Saltsman," respectively) are members of the Burlington Board of Health and each Defendant is being sued in his or her individual and official capacities.

## FACTS

9. Plaintiffs repeat and reallege the allegations contained in paragraphs 1-8 of this complaint as if each was specifically restated herein:

10. Nemoda was hired by the Burlington Board of Health on or about January 28, 2008.

11. Nemoda was hired as a Supervising Nurse by the Burlington Board of Health.

12. Nemoda faithfully and satisfactorily performed the duties of her position while she was employed by Burlington.

13. Nemoda was suspended by the Board of Health on or about September 25, 2009 amidst allegations of unethical conduct.

14. Nemoda's suspension was initiated by Mastenbrook, who interrupted a patient meeting between Nemoda and a patient in order to effectuate notice of Nemoda's suspension.

15. Subsequent to her suspension, McSweeney, Mastenbrook and Piccolo conspired to acquire information against Nemoda in order to effectuate her being discharged from Burlington's employ.

16. McSweeney contacted a town resident who had dropped off groceries to the Board of Health Nurse's Office on or about September 25, 2009 for Nemoda.

17. McSweeney caused a so-called "statement" of this resident to be drafted which statement purported to comprise testimony of the alleged donor.

18. On or about September 28, 2009, McSweeney's purported "statement" were presented to the donor by Mastenbrook, McSweeney and Piccolo and his signature was requested by the co-conspirators.

19. The donor refused to sign McSweeney's purported "statement."

20. Undeterred in their plan to cause Nemoda to permanently lose her job with Burlington, McSweeney, Mastenbrook, Piccolo, and the Board of Health, jointly and severally, enlisted the aid of Mercier in their quest to have Nemoda permanently discharged. Toward that end, members of the board engaged in private email communications comprising deliberations between them in violation of open meeting law provisions.

21. Upon barely 3 week's notice, Nemoda was called upon to attend and defend herself at a Burlington Board of Health hearing, with Mercier presiding as hearing officer. Prior to that

hearing, Nemoda was advised of scheduled Executive Sessions of the Board of Health, which sessions violated open meeting law provisions.

22. The hearing resulted in a self-serving report substantiating a decision to fire Nemoda as a Supervising Nurse based upon alleged ethics violations due to her receiving groceries and because of her expression of speech to the donor, despite their being no finding that the value of the groceries exceeded $50.00.

23. Nemoda was not present at the Nurse's Office when the donor dropped off the groceries.

24. Nemoda did not receive the groceries from the donor.

25. Staff members Heidi Porter (hereinafter "Porter"), Paula Manzo (hereinafter "Manzo") and Defendant Piccolo received the groceries from the donor.

26. Nemoda had refused to accept cash from the donor on prior occasions when he offered cash to Nemoda.

27. Other items had been delivered to the staff members of the Board of Health in the past, without consequence.

28. Nemoda's suspension and subsequent discharge was pre-textual and a violation of her constitutional, statutory and common law rights.

29. At all times relevant hereto, and up to and including the date of her suspension and the date of her discharge, Nemoda was pregnant.

30. Nemoda's pregnancy was difficult, and this difficulty was known, or should have been known, by the Defendants.

31. Prior to the November 17, 2010 decision Nemoda had requested Family Medical Leave Act paperwork from Burlington.

32. The decision to discharge Nemoda was rendered after the Family Medical Leave Act paperwork had been requested and days before the application was submitted to Burlington.

33. Nemoda experienced severe emotional distress by and through the actions of the defendants.

34. Said emotional distress exacerbated the difficult pregnancy Nemoda was experiencing at all times relevant hereto.

35. Burlington circulated a legal advisory memorandum to its staff members of the Board of Health, which memorandum was sent to Mercier and town executives on or about September 3-10, 2009, approximately 3 weeks prior to Nemoda's suspension, and approximately 10 weeks prior to Nemoda's discharge.

36. The legal advisory memorandum clearly states as follows:

> [] Chapter 268A, §3, which prohibits any public official from receiving or any person from offering, and gift or gratuity of substantial value for or because of an official act. . . . [T]he State Ethics Commission has to date interpreted the term ["substantial value"] as applying to gifts valued ***at $50 or more.***

37. The Burlington employee's handbook, in effect at the time that the donor dropped off the gifts in September 2009, states that "[y]ou may not ask for or accept anything worth $50 or more from anyone with whom you have official dealings."

38. Despite the lack of evidence of the value of the groceries, Nemoda was suspended and later fired after hearing, while simultaneously experiencing a difficult pregnancy.

39. No known disciplinary action has been taken against Porter, Manzo and Piccolo, despite the fact that it was they who actually physically received the groceries from the donor and facilitated the transfer of the groceries to Nemoda.

40. Nemoda's pregnancy terminated amidst the intense stress imparted to her by the Defendants when Baby Girl Nemoda was born at 23 weeks 6 days of gestation on January 2, 2010.

41. Baby Girl Nemoda died approximately 3 hours after her birth due to extreme prematurity and respiratory failure.

42. Nemoda is a member of the American Federation of State, County and Municipal Employees ("AFSCME") and arbitration on her employment discharge is scheduled for September 2010.

43. Despite the fact that the Defendants' suspension and discharge has not been reviewed in arbitration as appropriate, Mastenbrook notified Nemoda on March 26, 2010 of another Executive Session of the Board of Health.

44. The sole reason given to Nemoda for the March 26, 2010 meeting was the following agenda item: "Your R.N. license will be discussed," thus implicating Nemoda's professional competency.

45. At Nemoda's request, while represented by private counsel, for (a) a stenographer to record the meeting of the Executive Session of the Board of Health, and (b) for a continuance pending arbitration, the March 26, 2010 Board of Health meeting was suspended indefinitely.

46. Burlington continues to oppose Nemoda's request for Unemployment Benefits from the Commonwealth of Massachusetts.

## COUNT I

47. Plaintiffs repeat and reallege the allegations contained in paragraphs 1-46 as if each was specifically repeated herein.

48. Defendants individually and as part of a conspiracy have under color of authority suspended and terminated Nemoda in violation of her Constitutional right of free speech pursuant to the First Amendment and, therefore in violation of 42 U.S.C. §1983.

**COUNT II**

49. Plaintiffs repeat and reallege the allegations contained in paragraphs 1-48 as if each was specifically repeated herein.

50. Defendants individually and as part of a conspiracy have under color of authority suspended and terminated Nemoda in violation of her Constitutional right of due process of law, pursuant to the Fourteenth Amendment, and, therefore in violation of 42 U.S.C. §1983.

**COUNT III**

51. Plaintiffs repeat and reallege the allegations contained in paragraphs 1-50 as if each was specifically repeated herein.

52. Defendants individually and as part of a conspiracy have under color of authority terminated Nemoda in violation of her Constitutional right of equal protection of the laws, pursuant to the Fourteenth Amendment, and, therefore in violation of 42 U.S.C. §1983.

**COUNT IV**

53. Plaintiffs repeat and reallege the allegations contained in paragraphs 1-52 as if each was specifically repeated herein.

54. Defendants individually and as part of a conspiracy have by threats, intimidation and harassment suspended and terminated Nemoda in violation of her constitutional right of free speech and, therefore in violation of M.G.L. c. 12 § 11I.

## COUNT V

55. Plaintiffs repeat and reallege the allegations contained in paragraphs 1-54 as if each was specifically repeated herein.

56. Defendants individually and as part of a conspiracy have by threats, intimidation and harassment suspended and terminated Nemoda in violation of her constitutional right of due process and, therefore in violation of M.G.L. c. 12 § 11I.

## COUNT VI

57. Plaintiffs repeat and reallege the allegations contained in paragraphs 1-56 as if each was specifically repeated herein.

58. Defendants individually and as part of a conspiracy have under color of authority terminated Nemoda in violation of her constitutional right of equal protection, and therefore in violation of M.G.L. c. 12 §11I.

## COUNT VII

59. Plaintiffs repeat and reallege the allegations contained in paragraphs 1-58 as if each was specifically repeated herein.

60. Defendants conspired under color of authority to deprive Nemoda, directly or indirectly, the equal protection of the laws, or of equal privileges and immunities under the laws, and therefore violated the provisions of 42 U.S.C. § 1985 (3), jointly and severally.

COUNT VIII

61. Plaintiffs repeat and reallege the allegations contained in paragraphs 1-60 as if each was specifically repeated herein.

62. Certain of the Defendants knew, or had cause to know, of the wrongful acts that were to be committed to Nemoda and, having power to prevent said acts from being committed, neglected to prevent said acts from being committed and are therefore liable to Defendants, jointly and severally pursuant to 42 U.S.C. § 1983.

COUNT IX

63. Plaintiffs repeat and reallege the allegations contained in paragraphs 1-62 as if each was specifically repeated herein.

64. Defendants have individually and conspiratorially intentionally interfered with Nemoda's contract of employment and his contractual rights.

COUNT X

65. Plaintiffs repeat and reallege the allegations contained in paragraphs 1-64 as if each was specifically repeated herein.

66. Nemoda has experienced severe emotional distress due to the actions of the Defendants, jointly and severally.

67. Defendant's actions are the proximate cause of Nemoda's emotional distress.

68. Defendant's individually and conspiratorially have intentionally inflicted emotional distress upon Nemoda.

COUNT XI

69. Plaintiffs repeat and reallege the allegations contained in paragraphs 1-68 as if each was specifically repeated herein.

70. Nemoda has experienced severe emotional distress due to the actions of the Defendants, jointly and severally.

71. Defendant's actions are the proximate cause of Nemoda's emotional distress.

72. Defendant's individually and conspiratorially have negligently inflicted emotional distress upon Nemoda.

**COUNT XII**

73. Plaintiffs repeat and reallege the allegations contained in paragraphs 1-72 as if each was specifically repeated herein.

74. Defendants have individually and conspiratorially acted as part of a common enterprise for the purpose of interfering with Nemoda's constitutional, statutory and like rights of employment and therefore are jointly and severally liable pursuant to the doctrine of common law conspiracy.

**COUNT XIII**

75. Plaintiffs repeat and reallege the allegations contained in paragraphs 1-74 as if each was specifically repeated herein.

76. Defendants have acted individually and conspiratorially to cause Nemoda a loss of consortium as to Baby Girl Nemoda.

**COUNT XIV**

77. Plaintiffs repeat and reallege the allegations contained in paragraphs 1-76 as if each was specifically repeated herein.

78. Defendants have acted individually and conspiratorially to cause person injury to Nemoda as a result of their wrongful acts and/or negligence in violation of M.G.L. c. 258 §2 and are therefore jointly and severally liable for said injuries.

## COUNT XV

79. Plaintiffs repeat and reallege the allegations contained in paragraphs 1-78 as if each was specifically repeated herein.

80. By their actions in deliberating between and among themselves and conducting Executive Sessions concerning Nemoda's employment, the Defendants violated applicable provisions of G.L. c. 39, *et seq.*

81. Nemoda suffered damages as a result of said violations by the Defendants.

82. The Defendants are liable for said damages, jontly and severally.

WHEREFORE, Plaintiffs pray that this honorable court enter judgment against the defendants, jointly and severally, and:

1. Order fair and reasonable compensation for Plaintiff's emotional distress;
2. Order fair and reasonable compensation for actual damages to the Plaintiff;
3. Order fair and reasonable compensation for consequential damages to the Plaintiff;
4. Order such fair and reasonable punitive damages to Plaintiff for Defendants' violations of 42 U.S.C. § 1983, 42 U.S.C. § 1985(3) and 42 U.S.C. §1986, M.G.L. c. 258 §2;
5. Order such fair and reasonable punitive damages to Plaintiffs for Defendants' violations of M.G.L. c. 12, § 11I;
6. Order fair and reasonable Attorney's Fees to the Plaintiffs;

7. Order such other relief as this court deems meet and just.

Respectfully Submitted,
The Plaintiff,
By her Attorneys,

Dated: March 17, 2011

John G. DiPiano (BBO#630134)
Stephanie A. Wittbecker (BBO#675572)
DiPIANO GODSON LLP
210 Broadway, Suite 202
Lynnfield, MA 01940
781-780-7080 (tel.)
781-780-7081 (fax.)

***THE PLAINTIFF DEMANDS A TRIAL BY JURY OF ALL COUNTS SO TRIABLE***

DiPIANO GODSON LLP
Attorneys at Law
210 Broadway, Suite 202
Lynnfield, Massachusetts 01940
Telephone: 781-780-7080
Facsimile: 781-780-7081

John G. DiPiano
Lloyd D. Godson
Edward F. Hoard, LL.M.
Elisabetta Daneu
Stephanie A. Wittbecker
Jo-Ann M. Stankus (*Paralegal*)

Anne L. Berger (*Of Counsel*)
BERGER & SMALL
Elizabeth A. D'Angelo (*Of Counsel*)

COPY

July 22, 2010

Mr. Ralph C. Patuto, Esquire
Chairman, Board of Selectmen
Burlington Town Hall
29 Center Street
Burlington, MA 01803

***Via First-Class Mail, Postage Pre-Paid***
***& Certified Mail–Return Recp't Requested***
***# 7003-0500-0001-3987-8304***

RE: Andria Nemoda, et al v. Town of Burlington, et al.

Dear Chairman Patuto:

This office serves as legal counsel to Andria Nemoda and Michael D. Watkins regarding the above-entitled matter. This correspondence comprises written presentment of claims against the Town of Burlington, and its employees, pursuant to the following Massachusetts and Federal Statutory Provisions: Massachusetts General Law, Chapter 258, §4; 42 United States Code §1981; 42 United States Code §1983; 42 United States Code § 985; 42 United States Code §1986 and 42 United States Code §1988. Ms. Nemoda claims damages as a result of the wrongful acts, misconduct, and negligence of the Town of Burlington, its employees, and members of the Board of Health from September 24, 2009 through present.

On September 24, 2009, Ms. Nemoda resided at 521 Farms Drive, Burlington, Massachusetts with her husband Michael Watkins and her son. At that time she was pregnant with her second child, a baby girl. At all times relevant to the circumstances and events described herein, Ms. Nemoda was employed, or was recently employed, as a Supervising Nurse for the Town of Burlington Board of Health.

On September 24, 2009, Ms. Nemoda was performing her customary duties as a Supervising Nurse for the Board of Health. While on duty, but physically away from the premises located at 61 Center Street, Burlington, Massachusetts, Ms. Nemoda was contacted by telephone by Mrs. Cathy Piccolo, Principal Clerk for the Burlington Board of Health. Mrs. Piccolo informed Ms. Nemoda that there were "perishables" in the office for her that had to be retrieved. The food that was dropped off by an appreciative, elderly town resident was of inconsequential value; and, no finding by the town has been made that the donation was worth more than twenty three dollars ($23.00) in value.

---

Also present at the Board of Health offices on the afternoon of September 24, 2009 when the groceries were delivered were Ms. Heidi Porter and Ms. Paula Manzo, coworkers of Mrs. Piccolo at the Burlington Board of Health.

Neither Mrs. Piccolo, nor Ms. Porter, nor Ms. Manzo turned the donor away with the food he wished to deliver Instead, they collectively accepted the gift on behalf of Ms. Nemoda and, in the case of Mrs. Piccolo, actually delivered the items to Ms. Nemoda, personally. In contrast, the Town later determined that Ms. Nemoda has *refused cash* offered to her by the same individual on prior occasions. Ms. Nemoda made it clear to Mrs. Piccolo on the day in question that she did not want to come into the building to retrieve the gift because she was having difficulty with her pregnancy, had a meeting to attend with the Massachusetts Association of Public Health Nurses, and that she was trying to decrease delays in getting underway to the meeting. Mrs. Piccolo walked the groceries to Ms. Nemoda's car in the parking lot of the Board of Health Office at 61 Center Street, Burlington, Massachusetts on September 24, 2009. Not knowing what to do with the food, some of which required refrigeration, Ms. Nemoda, who resided directly across the street from the Board of Health offices on September 24, 2009, took them home and proceeded to the meeting she was scheduled to attend.

The day after the groceries were delivered to by the elderly Burlington resident, Ms. Nemoda, on duty at the Board of Health offices, was interrupted while in consultation with a patient by Public Health Director Sharon Walker Mastenbrook. Ms. Walker Mastenbrook instructed Ms. Nemoda to leave her patient and to come into a meeting down the hall. Though odd and unprofessional, Ms. Nemoda complied with Ms. Walker Mastenbrook's directions and went into a room where Board of Health Members, Dr. Wayne Saltsman, M.D. and James Dion had assembled together with Ms. Walker Mastenbrook.

Without prior notice or discussion, Ms. Nemoda was handed a letter at the September 25, 2009 meeting leveling serious and unwarranted allegations against her by the Town of Burlington, she was then summarily suspended without pay for a period of five days. Immediately after the meeting, and without regard for the patient awaiting Ms. Nemoda's return, all board of health executive staff immediately absented themselves from the building. Consistent with her professionalism and duties as a health care provider, Ms. Nemoda, though pregnant, shocked and stunned by what had just transpired, returned to her patient and finished her consultation while technically on suspension. Management did not have, nor did they instruct or give Ms. Nemoda the opportunity to have, a union representative, or private counsel, available at the suspension meeting in which Ms. Nemoda was ambushed.

At all times relevant hereto, the Town of Burlington, the Burlington Board of Health Officials, Burlington Board of Health Employees and the Town Administrator, Robert Mercier, who later presided at what may only be described as a pre-textual hearing on a predetermined course of action by the town, knew, or should have known, that no ethical violation by Ms. Nemoda had ever occurred with respect to the groceries delivered to the Board of Health office on September 24, 2009. In fact, while the so-called discipline meted out on Ms. Nemoda by the Town of Burlington as of September 25, 2010 was swift, decisive (and became increasingly

---

draconian as time progressed) no apparent action was taken with respect to any of the three employees who actually received the food from the town resident and delivered them to Ms. Nemoda, namely Mrs. Piccolo, Ms. Porter and Ms. Manzo.

In fact, Ms. Porter subsequently went on to a higher position of authority with the City of Everett while Ms. Nemoda continued to be persecuted by the Town of Burlington.

At the time of her suspension, the Town of Burlington, Employee Handbook entitled *Personnel Rules and Regulations*, provided as follows:

> **All employees shall** make themselves familiar with and **comply with** [Massachusetts] **General Law, Chapter 268A,** which includes the following provisions:
>
> > You may *not* ask for **or accept anything worth $50 or more from anyone** with whom you have official dealings. . . . *Personnel Rules and Regulations* § 4.4 (amended July 1, 2008)(emphasis added).

The above policy and statute applied to all Board of Health employees on September 24, 2009. And, the lack of disciplinary action as to those employees who *accepted* the groceries from the town resident is indicative that all participants in Ms. Nemoda's so-called disciplinary proceedings knew, or should have known, that no ethical violation pursuant to G.L. c. 268A had occurred. Since only one of four employees who accepted the gifts was punished, it is clear that the Town of Burlington is treating individuals disparately under the law, in violation of Ms. Nemoda's Equal Protection guarantees under the State and United States Constitutions.

On or about September 28, 2009 Burlington Board of Health Chairman Terrance McSweeney, Public Health Director Sharon Walker Mastenbrook, and Principal Clerk Cathy Piccolo met with, and presented the donor of the groceries that Mrs. Piccolo, Ms. Porter and Ms. Manzo had actually accepted on September 24, 2009 with, a 13 paragraph document purporting to be the gentleman's statement. The document is not subscribed or sworn before any impartial notary; in fact, the donor refused to sign the document as his statement. In a contrived and self-serving maneuver, Mr. McSweeney, Ms. Walker Mastenbrook and Ms. Piccolo conspired in an attempt to authenticate the so-called statement themselves by signing the document on behalf of the grocery donor as an accurate rendition of the allegations written by the document's author, who, upon information and belief was, Principal Clerk Cathy Piccolo. At this stage, it is clear that (a) Ms. Piccolo and others delivered food to Ms. Nemoda, (b) that Mr. McSweeney and Ms. Walker Mastenbrook seized upon that occurrence as an opportunity to manufacture evidence supporting the discharge of Ms. Nemoda, and (c) that Ms. Piccolo, Ms. Walker Mastenbrook and Mr. McSweeney then attempted to salvage their plan against Ms. Nemoda when the donor would not underwrite *their* allegations against her by speaking *for* the donor himself. As such, the Town of Burlington clearly engaged in a conspiracy against Ms. Nemoda and has caused our clients damage thereby.

Between September 28, 2009 and October 16, 2009, Burlington called for an executive session of the Board of Health with Ms. Nemoda present. Ms. Nemoda was then visiting her mother-in-law in hospital in Pennsylvania. Burlington communicated its scheduling an

---

executive session through Ms. Nemoda's union and by letter served by constable to Ms. Nemoda's home and to Ms. Nemoda's mother's home, where the town knew Ms. Nemoda *did not* reside. Ms. Nemoda was informed by her union representative that she may present to the session with union representation or legal counsel, but that her representative would not be able to speak on her behalf. Ms. Nemoda communicated through the union that she could not attend because she was in Pennsylvania, and because of the condition of her mother-in-law, whose ventilation tube was being removed and who was not expected to survive the procedure. In keeping with its lack of courtesy or compassion to Ms. Nemoda, and to the best of her recollection, the executive session proceeded *ex-parte* while Ms. Nemoda supported her husband in Pennsylvania during a time when his mother may have been on her deathbed.

On or about October 16, 2009 the Burlington Board of Health purported to conduct a hearing on the issue of Ms. Nemoda's retention as a town employee. The hearing was held at Town Hall, with Town Administrator Robert Mercier acting as both Town Administrator and Hearing Officer -- an inherently conflicted role for Mr. Mercier to undertake because a town administrator is selected by elected officials and, therefore, in a politically charged situation such as the matter now in controversy his objectivity and impartiality were compromised from the moment the hearing was convened. In fact, Mr. Mercier had previously held and lost his position as Town Administrator for Burlington, which may have caused an inherent pressure upon him to perform as he perceived was expected by the Burlington Board of Health.

The hardship endured by Ms. Nemoda from September 24, 2009 through October 16, 2009 was burdensome. She had been suspended from her position as Supervising Nurse and her difficult pregnancy worsened from the formidable stressors mercilessly placed upon her by her employer, coworkers, and hometown. She could not understand why such acrimony had been leveled against her.

Ms. Nemoda agonized for a month while Mr. Mercier drafted his decision, which he issued on November 17, 2009. The so-called findings Mr. Mercier rendered are internally inconsistent and is more accurately described not as a memorandum of findings but as a memorandum of justification for a predetermined course of action. It is worthy to note that Mr. Mercier based his decision in part on what he claims Ms. Nemoda *said* to the grocery donor, thus implicating Ms. Nemoda's First Amendment guarantees of freedom of expression.

On November 19, 2009, Burlington fired Andria Nemoda, thus ending her paid administrative leave that had commenced after her hasty five day unpaid suspension.

Meanwhile, in furtherance of its design to place as much pressure and hardship upon Ms. Nemoda and her family as possible, Burlington contested Ms. Nemoda's claim for unemployment, which she filed on or about November 25, 2009. As a result of Burlington's reports to the Massachusetts Department of Workforce Development, Ms. Nemoda was disqualified from receiving unemployment benefits.

On January 2, 2010, after 23 weeks, six days gestation, and after approximately 100 days of drama and ordeal brought by the Town of Burlington to Ms. Nemoda, baby girl Nemoda was

born at 5:40 a.m. Baby girl Nemoda was discharged 5 minutes after life support was removed at 8:25 a.m. Despite her death at 8:30 a.m. on January 2, 2010, hospital records indicate that Ms. Nemoda held her lifeless daughter for hours after her death. Burlington's conduct throughout Ms. Nemoda's pregnancy exacerbated the difficulty in her pregnancy and was a substantial contributing factor to stressors that caused the premature delivery of her daughter and her subsequent death.

After her suspension, hearing, firing, birth and death of her daughter, and denial of her unemployment benefits, Ms. Nemoda began the process of appealing the adverse determination of the Department of Workforce Development on February 1, 2010. After hearing, the Department of Workforce Development reversed Ms. Nemoda's disqualification and reinstated her unemployment benefits. It is worthy of note that the statutory provisions under which the Massachusetts Department of Workforce Development reviews unemployment eligibility determinations is as follows:

> Whether there is substantial and credible evidence to show that the claimant left work voluntarily with good cause attributable to the employer or its agent, or involuntarily for urgent, compelling and necessitous reasons, or by discharge for deliberate misconduct in willful disregard of the employing unit's interest, or for a knowing violation of a reasonable and uniformly enforced policy or rule, unless violation was the result of the employee's incompetence. *Massachusetts General Law Chapter 151A §§ 25(e)(1) & (e)(2)(2010).*

Thus, one impartial administrative governmental body has already determined that the Town of Burlington has failed to meet its burden of proof in demonstrating that Ms. Nemoda separated from employment due to misconduct, or violation of a uniformly enforced policy or rule.

To be complete in its persecution of our client, the Town of Burlington also scheduled and convened yet another executive session wherein the sole agenda item was Ms. Nemoda's professional licensure -- bureaucratese for calling a meeting to determine how to report Ms. Nemoda to the board of registration such that her nursing license is in jeopardy. Minutes from that meeting should indicate that Ms. Nemoda appeared with counsel, requested a continuance so that a court stenographer could be present, and that the request was initially denied. Later, after consultation with the Board of Health attorney, the session minutes should indicate that at Ms. Nemoda's request, the session was continued indefinitely. The Board of Health's actions in scheduling this executive session months prior to Ms. Nemoda's arbitration telegraph the intent of the members of that board to do anything within their power to bring as much damage to Ms. Nemoda, professionally and personally, as possible. The Board's action of granting an indefinite continuance to Ms. Nemoda shows that the session was unnecessary and unwarranted in the first instance.

The Town of Burlington, Burlington Board of Health, its Officers, Directors, and Executive Staff, and the coworkers previously identified herein, continue its adverse actions against Ms. Nemoda to date.

---

The specific causes of action claimed by Ms. Nemoda and Mr. Watkins are as follows:

1. The physical, mental and conscious pain and suffering of Andria Nemoda;

2. The intentional and/or negligent infliction of emotional distress of Andria Nemoda;

3. The intentional and/ or negligent infliction of emotional distress of Michael Watkins;

4. The loss of parent/child consortium pursuant to M.G.L. c. 231 § 85X;

5. The right to due process and equal protection of law;

6. The right to freedom of speech;

7. Failure to Prevent;

8. Common Law Conspiracy;

9. Such other rights, including those set forth above, which are guaranteed under the Laws and Constitution of the United States by the provisions of the First and Fourteenth Amendments to the United States Constitution, and 42 U.S.C. §§ 1981, 1983, 1985, 1986, and 1988;

10. Such other rights which are guaranteed under the Laws of the Commonwealth of Massachusetts and the Massachusetts Declaration of Rights to the Constitution of the Commonwealth, including, but not limited to, the right to be free of negligence, intentional infliction of emotional distress and negligent infliction of emotional distress.

As a direct and proximate cause of the actions and conduct of the Town of Burlington, Burlington Board of Health, Terrance McSweeney, individually and is his capacity as Chairman of the Board of Health, Sharon Walker Mastenbrook, individually and in her capacity as Director of Public Health, Robert Mercier, individually and in his capacity as Town Administrator and Hearing Officer for the Town of Burlington, Cathy Piccolo, individually and in her capacity as Principal Clerk, Dr. Edward Weiner, individually and in his capacity as Burlington Board of Health Vice Chairman, Dr. Catherine Read, James Dion and Dr. Wayne Saltsman, individually and in their respective capacities as Board of Health Members, jointly and severally, Ms. Andria Nemoda and Mr. Watkins have suffered injuries, specifically severe emotional distress and loss of consortium.

---

WHEREFORE, Andria Nemoda and Michael D. Watkins hereby make demand upon the Town of Burlington in the amount of Three Million Five Hundred Thousand and no/100 Dollars ($3,500,000.00) for violation of the above described rights and for committing the above-described acts.

Our clients reserve the right to file a civil action in the appropriate Court pursuant to M.G.L. c. 258, § 4 and 42 U.S.C. §§ 1981, 1983, 1985, 1986, and 1988, which provide for compensatory damages, punitive damages, and attorney's fees.

We anticipate your timely response to this demand. If a reasonable offer of settlement is not tendered, we shall commence litigation after the expiration of said six (6) month period in accordance with applicable provisions of M.G.L. c. 258, *et seq*.

Thank you for your attention to this matter.

Best regards,

John G. DiPiano

JGD/bhs
cc: Ms. Andria Nemoda