UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ANDRIA NEMODA, Plaintiff, | ) | |
| v. | ) | C.A. NO. 11-10547 |
| TOWN OF BURLINGTON, ROBERT MERCIER, individually and in his capacity as Town Administrator, SHARON WALKER MASTENBROOK, individually and in her capacity as Director of Public Health, CATHY PICCOLO, individually and in her capacity as Principal Clerk, EUGENE T. MCSWEENEY, individually and in his capacity as Board of Health Chairman, DR. EDWARD WEINER, individually and in his capacity as Board of Health Vice Chairman, DR. CATHERINE READ, JAMES DION and DR. WAYNE SALTSMAN, individually and in their respective capacities as Board of Health Members, jointly and severally, Defendants. | ) | |

**TOWN OF BURLINGTON'S AND TOWN OFFICIALS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Preliminary Statement

This is a rather garden variety breach of contract action cabined by a number of "constitutional" claims, none of which are legally viable. Plaintiff's "free speech" claim fails to state a legally viable claim because the Complaint does not contain a single reference to any protected "speech" in which she engaged. Plaintiff's due process claim fails because, as plaintiff concedes, she had notice of and a meaningful opportunity to be heard at her dismissal hearing, the touchstones of any due process claim. Plaintiff's equal protection claim fails as a matter of law under the Supreme Court's recent decision in *Enquist v. Oregon,* citation omitted. Plaintiff's

Section 1985(3) claim fails because plaintiff has not alleged that her termination was race-based. Plaintiff's claim under the Massachusetts Civil Rights Act fails because, as stated above, she has no constitutional peg upon which to hang such a claim. Plaintiff's intentional and negligent infliction of emotional distress claims are barred by the exclusivity provided under Massachusetts Worker's Compensation law. Finally, plaintiff's remaining common law claims either fail to meet the pleading requirements established by the Supreme Court in *Bell Atlantic v. Twombly*, citation omitted, or are barred by the relevant provisions of the Massachusetts Tort Claims Act.

<u>Statement of Facts</u>

From January 28, 2008 until she was discharged in November, 2009, plaintiff, Andria Nemoda ("Ms. Nemoda") served as a Supervising Nurse in the Burlington Board of Health. Complaint, ¶¶10 & 31.[1] In that capacity, Ms. Nemoda was a member of the American Federation of State, County and Municipal Employees. *Id.*, ¶42.[2] Ms. Nemoda was hired by and reported to the six-person Burlington Board of Health. *Id.*, ¶10.[3] On September 25, 2009, Ms. Nemoda was suspended for five days "amidst allegations of unethical conduct," namely that she accepted groceries from a town resident the value of which exceeded $50.00. *Id.*, ¶¶13 & 22.[4] Subsequently, "upon barely three week's notice," a hearing was held by the Town Administrator,

[1] Although the Complaint, ¶31, uses the date November 17, 2010, Ms. Nemoda was actually discharged on November 17, 2009.

[2] An arbitration hearing relating to Ms. Nemoda's discharge was originally scheduled for September, 2010. *Id.*, ¶42. The Town of Burlington understands that hearing is now scheduled to take place before the American Arbitration Association on May 12, 2011.

[3] For the sake of ease, except where necessary, the Town of Burlington, the Board of Health and the several individual defendants will be referred to collectively as "the Town."

[4] M.G.L. c. 268A, §3, prohibits public officials from accepting any gifts with a value in excess of fifty dollars.

Robert Mercier, regarding these alleged allegations of unethical violations. *Id.*, ¶21.[5] Ms. Nemoda claims that the hearing resulted in a "self-serving report" substantiating a decision to fire her as a Supervising Nurse based on her receiving these groceries and "because of her expression of free speech to the donor."[6] Ms. Nemoda maintains this was unfair because she did not receive the groceries directly but, instead, they were delivered to her by other BOH staff members and also because other items have been delivered to staff members of the Board of Health in the past, without consequence." *Id.*, ¶¶24-27. Ms. Nemoda's equal protection claim is based upon the fact that no disciplinary action has been taken against the three BOH employees who actually received the groceries from the donor "and facilitated the transfer of the groceries to Nemoda." *Id.*, ¶39.

At the time of her hearing before the Town Administrator, Ms. Nemoda was pregnant. Ms. Nemoda alleges that the stress of these charges/hearings resulted in the premature delivery of her child, "Baby Girl Nemoda," who, tragically, died three hours after she was born due to "extreme prematurity and respiratory failure." *Id.*, ¶¶29 & 40. Although Ms. Nemoda claims she had "requested paperwork" from the Town of Burlington for purposes of filing a claim under

---

[5] The Complaint, ¶20, alleges that the members of the Board of Health "enlisted the aid of Mercier in their quest to have Nemoda permanently discharged." The Complaint is utterly silent with respect to what, if anything, Town Administrator Mercier did that was in any way improper. Accordingly, at least with respect to Mr. Mercier, the Complaint fails to meet the pleading requirements of FRCP Rule 8 as enunciated by the Supreme Court in Bell *Atlantic v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, __U.S.__, 129 S.Ct., 1937, 1949, 173 L.Ed. 2d 868 (2009). Arguably, the First Circuit required a somewhat heightened pleading standard even before these two decisions were issued by the Supreme Court. *See DM Research Inc. v. College of American Pathologists*, 170 F.3d 53, 55-56 (1st Cir. 1999).

[6] This one unadorned reference to Ms. Nemoda's "expression of speech" represents the *totality* of her First Amendment claim (Counts I & IV). Again, this does not satisfy the pleading standard set forth in *Bell Atlantic* and *Iqbal, supra*. In any event, Ms. Nemoda was terminated not only because of her unethical conduct, but also because of the lack of candor she displayed during the hearing before Town Administrator Mercier.

the Family Medical Leave Act, she does not allege that she actually requested FMLA leave and/or that it was denied. In fact, Ms. Nemoda is not making any claim under the FMLA. Continuing, Ms. Nemoda alleges that the Board of Health scheduled a meeting (March 26, 2010) where Ms. Nemoda's nursing license was going to be discussed; however, at her request the BOH meeting was "suspended indefinitely." *Id.*, ¶44-45. Finally, Ms. Nemoda contends that the Town continues to oppose her request for Unemployment Benefits from the Commonwealth. *Id.*, ¶46. From these rather scant allegations, Ms. Nemoda makes a host of legal claims which the Town will address *seriatim.*

**ARGUMENT**

I. Standard of Review.

On a motion to dismiss, "we accept as true all well-pleaded facts in the complaint, and draw all reasonable inferences in favor of the plaintiff[ ]" *Gargano v. Liberty Int'l Underwriters, Inc.*, 572 F.3d 45, 48-49 (1st Cir. 2009). The Federal Rules of Civil Procedure require a complaint to set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss, this short, plain statement must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," and allege "a plausible entitlement to relief." *Bell Atl. Corp. v. Twombly, supra*, 550 U.S. at 555 & 559. This plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, _U.S._, 129 S.Ct. 1937, 1949 173 L.Ed.2d 868 (2009). "A formulaic recitation of the elements of a cause of action will not do . . .." *Bell Atl.*, 550 U.S. at 555. A court may disregard "bald assertions, unsupportable conclusions, and opprobrious epithets." In *re Citigroup, Inc.*, 535 F.3d 45, 52 (1st Cir. 2008).

## II. Ms. Nemoda Has Failed to State any Legally Recognizable Constitutional or Federal Statutory Claim.

Ms. Nemoda's several constitutional claims are as follows:

Count I – Conspiracy to violate her First Amendment rights in violation of Section 1983;
Count II – Conspiracy to violate her Due Process rights in violation of Section 1983;
Count III – Conspiracy to violate her Equal Protection rights in violation of Section 1983;
Count IV – Conspiracy to violate her First Amendment rights in violation of the Mass. Civil Rights Act ("MCRA");
Count V – Conspiracy to violate her Due Process rights in violation of MCRA;
Count VI – Conspiracy to violate her Equal Protection rights in violation of MCRA;
Count VII – Conspiracy to violate her Privileges and Immunities in violation of 42 U.S.C. §1985(3); and
Count VIII – Failure of "certain of the defendants" to prevent the "wrongful acts committed to Nemoda" in violation of 42 U.S.C. §1983 ("Section 1983"). None of these claims are availing.[7]

Among her gallimaufry of charges, Ms. Nemoda claims that she was fired for engaging in some unspecified speech.[8] The complaint fails to identify what speech she engaged in other than a fleeting reference that she said something (which is not identified in the complaint) to the donor of the food. Complaint, ¶22. As Ms. Nemoda has failed to provide any specificity whatsoever, the Town submits that this one reference to her "speech" cannot support a First Amendment claim. Unlike in the typical retaliation claim, for example, Ms. Nemoda has not alleged that she was terminated for commenting on a matter of public concern and that she was

---

[7] Ms. Nemoda's Section 1983 claim (Count VIII) is nearly impossible to discern. Suffice to say, however, Ms. Nemoda's claim that "certain of the defendants" may be held liable because they "*neglected to prevent* said acts from being committed" fails to state a Section 1983 claim as a matter of law. *See DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189, 196 (1989) (Section 1983 claim cannot be premised upon "mere negligence" and suggesting that even claims of gross negligence will not support such a claim).

[8] Ms. Nemoda fares no better because she has couched her free speech, due process and equal protection claims in terms of a "conspiracy" under Section 1983. Such a conspiracy requires an agreement between two or more people, an overt act, and an actual deprivation of a right secured by the Constitution or laws of the United States. *See Earle v. Benoit*, 850 F.2d 836, 844 (1st Cir. 1988). Even assuming *arguendo* Ms. Nemoda has adequately pled the first two parts – a dubious proposition at best – the Town officials did not deprive her of any rights secured by the Constitution or federal laws.

speaking in some capacity other than as a Supervising Nurse. On the contrary, a fair reading of the Complaint suggests that whatever the extent of her "expression" to the donor of this food, she was acting in her official capacity and, hence, Ms. Nemoda's free speech claim is barred by the Supreme Court's decision in *Garcetti v. Ceballos*, 547 U.S. 410 (2006) (First Amendment does not protect public employees speaking in their official capacities); *see also, Foley v. Town of Randolph*, 598 F.3d 1, 7-8 (1st Cir. 2009) (Fire Chief's comments to press at fire scene not protected speech); *Bruno v. Town of Framingham*, 2009 WL 4062177 (D. Mass. 2009) (soccer coaches comments to press about safety of soccer goals not protected speech).[9]

Turning to Ms. Nemoda's procedural due process claim, she concedes that she had three week's notice of the hearing before Town Administrator Mercier and an opportunity to present her account of the operative events. Indeed, Ms. Nemoda was represented by her Union Representative, James Breslin; Union President, Gerry Mills, was also present. Ms. Nemoda testified on her own behalf; she was allowed to cross-examine the Town's witnesses; and five exhibits were introduced at the hearing. With respect to Ms. Nemoda's procedural due process claim, no more is required under the Supreme Court's decision in *Loudermill.* The touchstone of any procedural due process claim is notice and a meaningful opportunity to be heard. *See, e.g. Gilbert v. Homar,* 520 U.S. 924 (1997); *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950). In a situation such as this one, where Ms. Nemoda arguably had a reasonable expectation in her continued employment with the Town, the Supreme Court has held that "some kind of hearing" is all that is required before the state can deprive a plaintiff of a property

[9] The Town is not suggesting that *Garcetti* and the decisions interpreting it stand for the proposition that all speech relating to the work or duties of a public employee, regardless of the significance in terms of public import, is per se unprotected. The Town is suggesting that, whatever can be gleaned from the circumstances surrounding Ms. Nemoda's comment to the unidentified donor of the food, support the notion that Ms. Nemoda was speaking in her capacity as a Supervising Nurse and not in her capacity as an "ordinary citizen."

interest. *Cleveland Board of Education v. Loudermill,* 407 U.S. 532, 542 (1985). *Cf. Braslett v. Cota*, 761 F.2d 827, 837 (1st Cir. 1985) citing *Whithrow v. Larkin*, 421 U.S. 35, 53-54 (1975) (fact that administrative hearing was conducted by same official who brought charges against plaintiff does not by itself offend notions of due process). The requisite procedures "need not be elaborate." *Loudermill,* 470 U.S. at 545. Since Ms. Nemoda admits she had three weeks advance notice of the discharge hearing, and it is undisputed that she was allowed her own representation and the opportunity to call and cross-examine witnesses, she has essentially conceded that the hearing before the Town Administrator satisfies the *Loudermill* standard. In addition, Ms. Nemoda's dismissal is the subject of a separate arbitration proceeding scheduled to be heard next month. This kind of post-deprivation remedy is further evidence that Ms. Nemoda does not and cannot maintain a procedural due process claim. *See, e.g.*, *Paratt v. Taylor*, 451 U.S. 527, 543-544 (1981); *see also*, *Wojcik v. Mass. State Lottery Commission*, 300 F.3d 92, 102-103 (1st Cir. 2002)(rejecting plaintiff's due process claim where, among other things, he was afforded a "full arbitration hearing" under the terms of the parties' collective bargaining agreement); *O'Neill v. Baker*, 210 F.3d 41, 48-50 (1st Cir. 2000) (plaintiff – tenured civil service employee, not deprived of due process where she had six-days advance notice of pretermination hearing and a meaningful opportunity to be heard).

Moving next to Ms. Nemoda's substantive due process claim, the Town is aware that the Supreme Court has stated that the liberty interest guaranteed by the Fourteenth Amendment "denotes not merely freedom from bodily restraint but also the right [sic] to engage in any of the common occupations of life . . . ." *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923). Nonetheless, the Supreme Court has been "reluctant to expand the concept of substantive due process because the guideposts for reasonable decision making in this unchartered area are scare and open-

ended." *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992).[10] As the First Circuit has observed, "the substantive due process guarantee does not, however, serve as means of constitutionalizing tort law so as to 'impose liability whenever someone cloaked with state authority causes harm." *Pagan v. Calderone*, 448 F.3d 16, 32 (1st Cir. 2006) citing *County of Sacramento v. Lewis*, 523 U.S. 833, 848 (1998). Instead, the First Circuit has reserved these kinds of claims for conduct that "shocks the conscience" *and* where that conduct deprived plaintiff of a protected interest in life, liberty or property. *Pagan*, 448 F.3d at 32. "While [the Court] has 'left the door slightly ajar . . .for truly horrendous situations, any permit or license denial, no matter how unattractive, that falls short of being truly horrendous, is unlikely to qualify as conscience-shocking." *Id.* at 33 (citations omitted); *see also Maldonado v. Fontanes*, 568 F.3d 263, 272-73 (1st Cir. 2009) (opining though not holding that conscience-shocking test likely applies to deprivations of property). The Town need not belabor the point. The First Circuit has rejected substantive due process claims in any number of cases in which the alleged wrongful conduct was, by any objective measure, worse than thath alleged here. *See, e.g., McConkie v. Nichols*, 446 F.3d 258 (1st Cir. 2006)(police officer lying to suspect during interrogation to elicit confession did not shock the conscience); *Pittsley v. Warish*, 927 F.2d 3, 7 (1st Cir. 1991)(holding that while it may have been "despicable and wrongful" for an officer to tell young children they would never see the man they viewed as their father, it did not shock the conscience).[11] While Ms. Nemoda believes she was wrongfully terminated, even if that is the

---

[10] Interestingly, in *Washington v. Glucksberg*, the Supreme Court cited its decision in *Meyer v. Nebraska*, not for any employment-related right, but for the right "to direct the education and upbringing of one's children." 521 U.S. 702, 720 (1997).

[11] It bears repeating that although Ms. Nemoda makes reference to the FMLA, Complaint, ¶31, she is not making any claim under the FMLA. Similarly, while Ms. Nemoda states that the Board of Health was going to meet to consider Ms. Nemoda's nursing license, she concedes that

result reached by the arbitrator, such a finding alone would not support a substantive due process claim. For example, the arbitrator may find that Ms. Nemoda did engage in misconduct, i.e. accepting goods with a value exceeding $50, but that her conduct was not a terminable offense. This result would hardly support a finding that the Town engaged in "conscience shocking" conduct.[12]

The Town next turns to Ms. Nemoda's equal protection claims (Counts III & VI). To begin with, the Town submits that the Supreme Court's decision in *Enquist v. Oregon Dep't. of Agriculture*, __ U.S.__, 128 S.Ct. 2146, 2151, 170 L.Ed.2d 975 (2008) is fatal to Ms. Nemoda's equal protection claims. In *Enquist*, the Supreme Court held that so-called "class of one" equal protection claims cannot be maintained in a public employment setting where the plaintiff is not a member of a protected class. This pegs Ms. Nemoda's claim exactly and, hence, she cannot maintain an equal protection claim based on the facts as alleged. *See Balboni v. Town of Plymouth*, 2009 WL 3754401 (D. Mass. 2009), annexed hereto as Exhibit A. Should this Court decide otherwise, however, in order to establish an equal protection claim, Ms. Nemoda must show that "compared with others similarly situated, she was selectively treated. . .based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of

---

the March 26, 2010 Board of Health meeting was "suspended indefinitely." Complaint, ¶¶43-45. Likewise, while Ms. Nemoda alleges that the Town "continues to oppose" her request for unemployment benefits, id., ¶46, the reality is that the Department of Workforce Development allowed her claim for unemploymet benefits and the Town has not challenged that result. Hence, the *only* "adverse action" which might conceivably support Ms. Nemoda's substantive due process claim, is her post-hearing termination by the Town Administrator, which, as stated above, is currently the subject of arbitration pursuant to the parties' Collective Bargaining Agreement.

[12] The Complaint also fails to state a viable substantive due process claim because it does not demonstrate "how *each [d]efendant* 'participated in the conduct' that deprived [Nemoda] of her rights." *Pease v. Burns*, 719 F.Supp.2d 143, 154-155 (D. Mass. 2010) (internal citations omitted) (emphasis added).

constitutional rights, or malicious or bad faith intent to injure a person." *Barrington Cove Ltd. Partnerhsip v. R.I. Housing and Mortgage Fin. Corp.*, 246 F.3d 1, 7 (1st Cir. 2001). The plaintiff and the "other protagonists" must be similarly situated "in all relevant respects." *Id*. at 8. The totality of Ms. Nemoda's equal protection claim lies in the one following allegation: "Other items had been delivered to the staff members of the Board of Health in the past, without consequence." Complaint, ¶27. For starters, the Town submits that this one unadorned statement does not meet the pleading standards set forth in *Bell Atlantic* and *Iqbal*, *supra.* Moreover, the Town notes that the First Circuit has rejected equal protection claims where the plaintiff actually identified (or alleged anyway) other comparators (which Ms. Nemoda has not done), but found that those comparators were not "in all relevant respects" similar to the plaintiff. *See, e.g., Clark v. Bosher*, 514 F.3d 107 (1st Cir. 2008)(upholding district court's dismissal of the complaint where plaintiff's proposed subdivision plan was not similarly situated to prior projects approved by the Westfield Planning Board). That ends all of Ms. Nemoda's constitutional claims. The Town now turns to Ms. Nemoda's one federal statutory claim which warrants little discussion.

Ms. Nemoda has one claim based on federal law. Ms. Nemoda maintains that the individual defendants "conspired . . .to deprive her of the equal protection of the laws. . ." in violation of 42 U.S.C. §1985(3). Complaint, ¶60 (Count VII). It is axiomatic that claims brought under Section 1985(3) must allege that the conduct "complained of resulted from an invidiously discriminatory class-based animus." *Aulson v. Blenchard*, 83 F.3d 1, 44 (1st Cir. 1996). The *Aulson* Court explained, "plaintiffs must allege facts showing that (1) the defendants conspired against them because of their membership in a class, and (2) the criteria defining the class are invidious." *Id.* (discussing interpretation of *Griffin v. Breckenridge*, 403 U.S. 88, 102

(1971)). The Complaint contains no such allegations and, accordingly, Count VII should be dismissed as a matter of law. The Town now addresses Ms. Nemoda's state law and common law claims.

III. The Complaint Fails to State Any Viable State or Common Law Claims.

Ms. Nemoda alleges that the Town and the several Town officials violated the Mass. Civil Rights Act, G.L. c. 12, §11I, by "conspiring" to violate her rights to free speech (Count IV); due process (Count V); and equal protection (Count VI). The Massachusetts Civil Rights Act ("MCRA") was premised on and adumbrates the federal civil rights law, 42 U.S.C. §1983. *Batchelder v. Allied Stores Corp.*, 393 Mass. 819 (1985). Again, the Town need not dwell. For the reasons discussed above, Ms. Nemoda's complaint fails to state a viable free speech, due process or equal protection claim. In the absence of any constitutional hook upon which to hang her MCRA claim, Ms. Nemoda's MCRA claim should be dismissed as well. *Therrien v. Hamilton*, 849 F.Supp. 110, 115 (D. Mass. 1994); *Perkins v. Commonwealth*, 52 Mass.App. Ct. 175, 181-82 (2001).[13] In addition, the Town and the individual Town officials acting in their official capacity are not "persons" within the meaning of MCRA and, hence, cannot be held liable thereunder in their official capacities. *Howcroft v. City of Peabody*, 51 Mass.App.Ct. 573, 592 (2001).

---

[13] Of course, to maintain any sort of MCRA claim, Ms. Nemoda must also establish that the Town's actions were undertaken by "threats, intimidation or coercion." G.L. c. 12, §11I. In this regard, the Complaint is devoid of any allegations that the Town Administrator or Board of Health did so. Notably, a direct deprivation of one's constitutional rights absent "threats, intimidation or coercion," is not actionable under MCRA. *Longval v. Commissioner of Correction*, 404 Mass. 325, 333 (1989); *cf. Freeman v. Planning Bd. of West Boylston*, 419 Mass. 548, 555-556 (1995)(MCRA's "threats, intimidation or coercion" requirement designed to prevent the Act from creating a "vast, constitutional tort"); *Bell v. Mazza*, 394 Mass. 176, 182-183 (1985)(same).

Proceeding somewhat out of order, the Town addresses next Ms. Nemoda's common law conspiracy claim (Count XII). Ms. Nemoda alleges that the defendants "act[ed] conspiratorially as part of a common enterprise" for purposes of interfering with her "constitutional, statutory and like rights of employment." Complaint, ¶74.[14] Massachusetts recognizes two types of civil conspiracies. In the first type, the defendants combine to exert "some peculiar power of coercion over the plaintiff. . .which any individual standing in a like relation to the plaintiff would not have had." *Aetna Cas. Sur. Co. v. P&B Autobody*, 43 F.3d 1546, 1563 (1st Cir. 1994)(citing the "very limited cause of action" outlined in *Fleming v. Dane*, 304 Mass. 46, 50 (1939)). The second type involves the concerted action of the defendants: there must be a "common design or agreement, although not necessary express, between two or more persons to do a wrongful act and . . .proof of some tortious act in furtherance of the agreement." *Aetna Cas. Sur. Co.*, 43 F.3d at 1564. Here, the Complaint lacks allegations sufficient to support either theory. As to the former, Ms. Nemoda has not alleged that any of the defendants "coerced" her to do anything. Likewise, she has not alleged any facts to support the conclusory statement that the defendants were acting as part of a "common enterprise." Her allegation that the defendants acted "conspiratorially" is merely a "label and conclusion insufficient to survive a motion to dismiss." *Ianncchino v. Ford Motor Company*, 451 Mass. 623, 636 (2008), quoting *Bell Atl. Corp.*, 550 U.S. at 555; *see also, South Middlesex Opportunity Council v. Town of Framingham*, 2008 WL 4595369*23 (D. Mass. 2008). The Town turns to Ms. Nemoda's remaining state law and common law claims.

---

[14] The Town Administrator, Robert Mercier, is appointed by and reports to the Board of Selectmen. The Board of Health is an autonomous body comprised of six elected officials. M.G.L. c. 41, §1.

Without stating who among the Town officials, committed which "wrongful acts," Ms. Nemoda alleges that the "defendants have individually and conspiratorially intentionally interfered with [her] contract of employment and [her] contractual rights." Complaint, ¶64 (Count IX). Since all of the Town officials are named in both their official and individual capacities, this claim (along with Ms. Nemoda's claim for intentional infliction of emotional distress (Count X), is barred by the Massachusetts Tort Claims Act, M.G.L. c. 258, §10(c), which expressly provides that a public employer remains immune from suit for "any claim" arising out of an intentional tort including, for example, interference with contractual relations. *See, e.g., Spring v. Geriatric Auth. of Holyoke*, 394 Mass. 274, 282-86 (1985)(intentional infliction of emotional distress claim subject to the MTCA). To maintain an intentional interference with contract action against the Town officials in their individual capacities, Ms. Nemoda must prove that (1) she had a business relationship with a third party, (2) the defendants knew of the relationship, (3) the defendants interfered with that relationship through improper means or motives, and (4) her financial loss resulted directly from the defendants' conduct. *Kurker v. Hill*, 44 Mass. App. Ct. 184, 191 (1998). Ms. Nemoda must also establish that the defendants' ill-motives were borne of a "spiteful, malignant purpose, *unrelated* to the legitimate interests" of the Town. *Blackstone v. Cashman,* 448 Mass. 255, 261 (2007) (emphasis added). The Board of Health is the hiring authority for employees of the Health Department. M.G.L. c. 111, §§27 & 30. Hence, with respect to the individual members of the Board of Health anyway, Ms. Nemoda cannot maintain this particular cause of action because she did not have a contractual relationship with a third party. *See, e.g., Schinkel v. Maxi-Holding, Inc.,* 30 Mass.App.Ct. 41, 50 (1991). Moreover, the Complaint is utterly silent with respect to the alleged "illegal means or motives" employed by ***any*** of the Town officials. Yet, again, in wholly

conclusory fashion, Ms. Nemoda alleges that her suspension and subsequent discharge "was pretextual and a violation of her constitutional, statutory and common law rights." Complaint, ¶28. However, there are no allegations to support her claim that the Town officials' actions were "pretextual." Indeed, there are no allegations at all concerning the "motives" of *any* of the Town officials, let alone each one of them. The Town submits that Ms. Nemoda has simply failed to state a viable intentional interference with contract claim.

Ms. Nemoda has a separate claim for negligent infliction of emotional distress (Count XI). With regard to the "negligence" component of this claim, the Complaint is utterly silent with respect to *which* of the Town officials engaged in *what* conduct that Ms. Nemoda contends was "negligent." Again, this sort of lump sum pleading does not meet the pleading standards established by the Supreme Court in *Bell Atlantic* and *Iqbal, supra*. Indeed, Ms. Nemoda's claim that the Town officials acted "conspiratorially" and "negligently" is wholly inconsistent. Should this Court find otherwise, however, Ms. Nemoda's claim for negligent infliction of emotional distress (along with her intentional interference with emotional distress claim), should be dismissed for a more fundamental reason: they are subject to the exclusivity provision of the Workmen's Compensation Act ("WCA"), M.G.L. c. 152, §24. The WCA provides the exclusive remedy for an employee's claim of personal injuries against an employer if the injury arises out of and in the course of employment. *Foley v. Polaroid Corp.*, 381 Mass. 545, 548-49 (1980). Actions for intentional and negligent infliction of emotional distress against an employer are personal injuries for which an employee's recovery may only be sought through the WCA, not in tort. *See, e.g., Green v. Wyman-Gordon Co.*, 422 Mass. 551, 560-62 (1996); *Evans v. T.J. Maxx, Inc.*, No. MICV2003-04501-A, 2005 Mass. Super. LEXIS 41, at *11 (Mass. Super. Ct. Feb. 15, 2005). Whether Ms. Nemoda has sought Worker's Compensation benefits or not is beside the

point: the WCA is the "exclusive" avenue for the "emotional distress" related claims she alleges here. See M.G.L. c. 152, §24.

This leaves Ms. Nemoda's final claim that the Town officials "deliberated" between and among themselves in violation of Massachusetts' Open Meetings Law, M.G.L. c. 39, §32(b)(Count XV).[15] Typically, violations of the Open Meetings Law are pursued by the District Attorney's office following the filing of a complaint by one or more residents of the Commonwealth. Ms. Nemoda has not alleged that she even filed such a complaint with the Essex County District Attorney's Office. Assuming *arguendo* that Ms. Nemoda can independently pursue this claim, the Town submits that this Court need not retain jurisdiction to hear that one claim or, for that matter, any of her state or common law claims. *See*, *Parker v. Hurley*, 474 F.Supp.2d 261, 278 (D. Mass. 2007) aff'd., 514 F.3d 87 (1st Cir. 2008).

Finally, all of the Town officials are entitled to qualified immunity. Broadly, the doctrine of qualified immunity shields public officials from liability for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 230 (2009)(quoting *Harlow v. Fitzgerald*, 457 U.S. at 818); *Mosher v. Nelson*, 589 F.3d 488, 493 (1st Cir. 2009)("To be liable, an official must be on notice that his conduct violates established law."). To decide whether a particular official is entitled to qualified immunity, a "court must decide: (1) whether the facts alleged or shown by the Plaintiff make out a violation of a constitutional [or statutory] right; and (2) if so, whether the right was 'clearly established at the time of the defendant's alleged violation.'" *Estrada v. Rhode Island*, 594 F.3d 56, 62 (1st Cir. 2010)(internal citations omitted).

[15] Ms. Nemoda also has a separate claim (Count XIII) for loss of consortium; however, while that is a recognized basis for recovery, loss of consortium is not considered a separate legal theory. *Short v. Town of Burlington*, 11 Mass.App.Ct. 909 (1981) (claim of plaintiff's wife for loss of consortium failed as entirely derivative of failed personal injury claim by husband).

The First Circuit has explained that the second step of the qualified immunity analysis has two aspects: "(1) 'the clarity of the law at the time of the alleged civil rights violation' and (2) whether, on the facts of the case, a 'reasonable defendant would have understood that his conduct violated the Plaintiff's constitutional [or statutory] rights.'" *Estrada, supra*, 594 F.3d at 63. Significantly, the "rights" allegedly violated must be defined at an "appropriate level of specificity." *Raiche v. Pietroski*, 623 F.3d 30, 38 (1st Cir. 2010)(quoting *Wilson v. Layne*, 526 U.S. 603, 615 (1999)). As stated above, the Town officials submit that their conduct did not violate any of Ms. Nemoda's constitutional rights or a violation of any federal statute.[16] To recapitulate briefly, Ms. Nemoda's free speech claim is so vague as to be non-existent; moreover, whatever its basis, her First Amendment claim is barred by the Supreme Court's decision in *Garcetti v. Ceballos*, citation omitted. As to Ms. Nemoda's due process claim, she concedes she had three weeks advance notice of the hearing held by Town Administrator Mercier, where she appeared with Union representation, and was allowed to call and cross-examine witnesses. The Town clearly met *Loudermill's* edict that "some kind of hearing" be held before Ms. Nemoda was terminated. If this Court finds that the Supreme Court's decision in *Enquist* does not preclude her equal protection claim, then, absent *any* allegations that Town Administrator Mercier acted out of some "vindictiveness" or "ill-will" toward Ms. Nemoda, her equal protection claim also fails as a matter of law. *See, e.g., Village of Willowbrook v. Olech*, 528 U.S. 562, 565-566 (2000)(Breyer, J., concurring).

---

[16] It is well-settled that Section 1983 by itself does not create any independent rights. Of course, if this Court were to find that the Town violated some *state or tort law*, such a finding would not support a Section 1983 action. *See Baker v. McCollan*, 443 U.S. 137, 146 (1979).

**CONCLUSION**

WHEREFORE, the Town and the Town officials respectfully submit that the Complaint should be dismissed with prejudice in its entirety together with such other relief as this Court deems just and proper.

Respectfully submitted,

The Defendants,
TOWN OF BURLINGTON, ROBERT MERCIER, individually and in his capacity as Town Administrator, SHARON WALKER MASTENBROOK, individually and in her capacity as Director of Public Health, CATHY PICCOLO, individually and in her capacity as Principal Clerk, EUGENE T. MCSWEENEY, individually and in his capacity as Board of Health Chairman, DR. EDWARD WEINER, individually and in his capacity as Board of Health Vice Chairman, DR. CATHERINE READ, JAMES DION and DR. WAYNE SALTSMAN, individually and in their respective capacities as Board of Health Members,
By their attorneys,

**PIERCE, DAVIS & PERRITANO, LLP**

/s/ Adam Simms
Adam Simms, BBO #632617
90 Canal Street
Boston, MA 02114
(617) 350-0950
asimms@piercedavis.com

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing, Town of Burlington's and Town Officials' Memorandum of Law in Support of Their Motion to Dismiss Plaintiff's Complaint, filed through the Electronic Case Filing System, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and that a paper copy shall be served upon those indicated as non-registered participants on April 11, 2011.

/s/ Adam Simms
Adam Simms