# United States District Court
# District of Massachusetts

ANDRIA NEMODA,
Plaintiff,

v.

CIVIL ACTION NO. 11-10547-RBC[1]

THE TOWN OF BURLINGTON,
ROBERT MERCIER,
individually and in his capacity
as Town Administrator,
SHARON WALKER MASTENBROOK,
individually and in her capacity
as Director of Public Health,
CATHY PICCOLO, individually and in her capacity
as Principal Clerk,
EUGENE T. MCSWEENEY, individually and in his capacity
as Board of Health Chairman,
DR. EDWARD WEINER, individually and his capacity
as Board of Health Vice Chairman,
DR. CATHERINE READ,
JAMES DION AND
DR. WAYNE SALTSMAN, individually
and in their respective capacities as
Board of Health Members, jointly and severally,
Defendants.

---

1 With the parties' consent, this case was reassigned to the undersigned for all purposes, including trial and the entry of judgment, pursuant to 28 U.S.C. § 636(c).

# *MEMORANDUM AND ORDER ON TOWN OF BURLINGTON'S AND TOWN OFFICIALS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT* (#3)

COLLINGS, U.S.M.J.

## *I. Introduction*

On March 17, 2011, Andria Nemoda ("Nemoda") filed a fifteen-count complaint against nine defendants in the Superior Court of the Commonwealth of Massachusetts in and for Middlesex County. (#2[2]) The defendants are the Town of Burlington; Robert Mercier ("Mercier"), Town Administrator of Burlington, in his individual and official capacities; Sharon Walker-Mastenbrook ("Mastenbrook"), the Director of Public Health for Burlington, in her individual and official capacities; Cathy Piccolo ("Piccolo"), the Principal Clerk of the Burlington Public Health Department, in her individual and official capacities; Eugene T. McSweeney ("McSweeney"), Chairman of the Burlington Board of Health, in his individual and official capacities; Dr. Edward Weiner ("Weiner"),

---

[2] The entire state court record including the complaint is docketed as #2. In this Memorandum and Order, the docket designation #2 shall be used to refer to the complaint.

Vice Chairman of the Board of Health, in his individual and official capacities; and three other members of the Burlington Board of Health – Dr. Catherine Reed, James Dion, and Dr. Wayne Saltsman – each in his or her individual and official capacities (collectively referred to as "the Town" or "the defendants"). (#2 ¶¶ 2-8)

The federal claims alleged in the complaint are as follows: Count I - violation of the constitutional right of free speech pursuant to the First Amendment in violation of 42 U.S.C. § 1983; Count II - violation of the constitutional right of due process of the law pursuant to the Fourteenth Amendment in violation of 42 U.S.C. § 1983; Count III - violation of the constitutional right of equal protection of the laws pursuant to the Fourteenth Amendment in violation of 42 U.S.C. § 1983; Count VII - deprivation, either directly or indirectly, of the equal protection of the laws, or of equal privileges and immunities under the laws in violation of 42 U.S.C. § 1985(3); Count VIII - violation of 42 U.S.C. § 1986[3] due to certain defendants having knowledge, or having cause to know, of wrongful acts that were committed, having the power

[3] There appears to be a typo in the complaint. Although the plaintiff alleges that the injury listed in Count VIII is pursuant to 42 U.S.C. § 1983, the language contained in Count VIII comes almost directly from § 1986. Additionally, in the request for relief, she seeks punitive damages for the violation of § 1986, but has not listed a violation pursuant to this section elsewhere in the complaint.

to prevent the wrongful acts, and having neglected to prevent the wrongful acts. The state law claims alleged in the complaint are: Count IV - violation of constitutional right of free speech in violation of Mass. Gen. L. c. 12 § 11I; Count V - violation of the constitutional right of due process in violation of Mass. Gen. L. c. 12 § 11I; Count VI - violation of the constitutional right of equal protection in violation of Mass. Gen. L. c. 12 § 11I; Count IX - intentional interference with contract of employment and contractual rights; Count X - intentional infliction of emotional distress; Count XI - negligent infliction of emotional distress; Count XII - common law conspiracy; Count XIII - loss of consortium; Count XIV - negligence and/or wrongful acts in violation of Mass. Gen. L. c. 258 § 2; Count XV - violation of the Massachusetts Open Meeting Law in violation of applicable provisions of Mass. Gen. L. c. 39, *et seq*. (#2 ¶¶ 47-82)

On March 31, 2011, the defendants removed the suit to the United States District Court for the District of Massachusetts pursuant to 28 U.S.C. 1441(a) (#1) and then, eleven days later, filed a motion to dismiss the complaint in its entirety pursuant to Fed. R. Civ. P. 12(b)(6) together with a memorandum of law in support thereof. (##3, 4) Nemoda filed an opposition to the dispositive motion (#5) along with a memorandum of law (#6). On June 29, 2011, the

Court heard argument on the motion to dismiss, which was thereafter taken under advisement. At this juncture, the motion to dismiss stands ready for decision.

## *II. The Facts*

On or about January 28, 2008, Nemoda, a resident of Salisbury, Massachusetts, was hired by the Town of Burlington Board of Health as a Supervising Nurse. (#2 ¶¶ 1, 10-11) On September 24, 2009, while Nemoda was on duty but not physically present in the nurse's office, defendant Piccolo contacted Nemoda by telephone and informed her that an elderly town resident had dropped off food for Nemoda. (#2 ¶ 23 and Letter[4] at 1) This donation of food "was of inconsequential value." (#2, Letter at 1) Staff members, Heidi Porter ("Porter"), Paula Manzo ("Manzo") and Piccolo accepted the gift from the donor on behalf of Nemoda since Nemoda was not in the office. (#2 ¶ 25 and Letter at 2) When Piccolo told the plaintiff about this food donation, Nemoda informed her that she did not want to come to the office to retrieve the gift both because she was having difficulty with her pregnancy and she had a meeting to

---

[4] On a motion to dismiss, the facts are drawn "from the complaint and those documents fairly incorporated into it." *Artuso v. Vertex Pharm., Inc.*, 637 F.3d 1, 4 (1 Cir., 2011); *Gagliardi v. Sullivan*, 513 F.3d 301, 303 (1 Cir., 2008). Dated July 22, 2010, the letter was written by John G. DiPiano, Esq., plaintiff's counsel, and addressed to Ralph C. Patuto, Esq., the Chairman of the Board of Selectmen in Burlington. Since this letter is annexed to the complaint, it may properly be considered when recounting the facts.

attend with the Massachusetts Association of Public Health Nurses and she did not want to cause a delay in getting the meeting underway. (#2, Letter at 2) Piccolo then walked the groceries out to Nemoda's car and the plaintiff took the groceries home before proceeding to the meeting she was scheduled to attend. (#2, Letter at 2)

Approximately three weeks prior to Nemoda receiving this gift, in or around September 3-10, 2009, a legal advisory memorandum was circulated to staff members of the Board of Health, including defendant Mercier and town executives. (#2 ¶ 35) The legal advisory memorandum stated that "Chapter 268A, § 3, which prohibits any public official from receiving or any person from offering, and gift or gratuity of substantial value for or because of an official act . . . [T]he State Ethics Commission has to date interpreted the term ['substantial value'] as applying to gifts valued at $50 or more." (#2 ¶ 36) Additionally, the Burlington employee's handbook in effect in September 2009 stated that "[y]ou may not ask for or accept anything worth $50 or more from anyone with whom you have official dealings." (#2 ¶ 37)

The day after Nemoda received these groceries, on or about September 25, 2009, Nemoda was in a patient consultation meeting when she was interrupted by defendant Mastenbrook. (#2 ¶ 14 and Letter at 2) Mastenbrook

instructed Nemoda to leave her patient and to come to a meeting down the hall. (#2, Letter at 15) Defendants Saltsman, Dion, and Mastenbrook were all present during this meeting. (#2, Letter at 2) At this meeting, Nemoda was handed a letter "leveling serious and unwarranted allegations" concerning unethical conduct against her and she was subsequently suspended without pay for a period of five days. (#2 ¶ 13 and Letter at 2) At no point in time, either prior to or during the meeting, was Nemoda instructed or given the opportunity to have a union representative or private counsel with her. (#2, Letter at 2) After the five-day suspension ended, Nemoda was placed on paid administrative leave. (#2, Letter at 4) The plaintiff is the only employee who was punished for receiving the groceries, even though Porter, Manzo, and Piccolo were the individuals who actually physically received the donated food. (#2 ¶ 39)

On or about September 28, 2009, McSweeney, Mastenbrook, and Piccolo met with the donor of the groceries. (#2 ¶ 18) The three defendants asked the donor to sign a thirteen paragraph document that they had drafted and which purported to be the donor's statement; the donor refused. (#2 ¶¶ 17-18 and Letter at 3) Despite the donor's refusal, McSweeney, Mastenbrook, and Piccolo signed the document themselves "on behalf of the grocery donor." (#2, Letter at 3)

Sometime between September 28, 2009 and October 16, 2009, Nemoda was advised of a scheduled Executive Session of the Board of Health. (#2 ¶ 21 and Letter at 3) Nemoda's union representative told her that she could be present at the session with union representation or legal counsel but that her union representative would be unable to speak on her behalf. (#2 ¶ 21 and Letter at 4) Although Nemoda was unable to attend this session because she was in Pennsylvania at the time, it is her understanding that the executive session proceeded despite her absence. (#2, Letter at 4)

Nemoda was given three weeks notice that on October 16, 2009 the Burlington Board of Health would be conducting a hearing on the issue of Nemoda's continuing employment. (#2 ¶ 21 and Letter at 4) Defendant Mercier, the Town Administrator, presided as the hearing officer at the hearing and on November 17, 2009, Mercier issued his memorandum of findings. (#2 ¶ 21 and Letter at 4) His findings were based, at least in part, "upon alleged ethics violations due to [Nemoda] receiving groceries and because of her expression of speech to the donor." (#2 ¶ 22 and Letter at 4) Mercier made no findings that the groceries received cost more than the fifty dollar amount specified by Massachusetts law or by the Burlington employee's handbook. (#2 ¶¶ 22, 35-37) As a result of Mercier's findings, however, Nemoda was

subsequently fired on November 19, 2009. (#2 ¶¶ 22, 38 and Letter at 4)[5]

Throughout these events, Nemoda was dealing with a difficult pregnancy and the Town knew about her difficulties. (#2 ¶¶ 29-30) On January 2, 2010, she gave birth to a baby girl after a twenty-three week, six days gestation and the baby survived for only three hours after her birth due to extreme prematurity and respiratory failure. (#2 ¶¶ 40-41) Nemoda contends that her difficult pregnancy was exacerbated by the events leading up to, and in the aftermath of, her discharge. (#2 ¶¶ 33-34)

### *III. Standard for Dismissal Under Fed. R. Civ. P. 12(b)(6)*

A party's Rule 12(b)(6) motion to dismiss challenges the ability of an opponent's complaint to state a claim. In deciding a motion to dismiss for failure to state a claim, a court must "'accept as true all well-pleaded facts set forth in the complaint and draw all reasonable inferences therefrom in the pleader's favor.'" *Haley v. City of Boston*, No. 10-2064, - F.3d -,-, 2011 WL 4347027, *3 (1 Cir., Sept. 19, 2011) (quoting *Arturo v. Vertex Pharm., Inc.*, 637 F.3d 1, 5 (1 Cir., 2011)). "[T]he complaint must 'contain sufficient factual matter ... to state a claim to relief that is plausible on its face.'" *Haley*, 2011 WL

5 Nemoda's discharge is also the subject of a separate arbitration proceeding that took place in May 2011. At the time of oral argument, no decision had yet been rendered.

4347027, *3 (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (further internal quotations and citation omitted) (alteration in original). When considering a motion to dismiss, a court "may augment these facts and inferences with data points gleaned from documents incorporated into the complaint, matters of public record, and facts susceptible to judicial notice." *Haley*, 2011 WL 4347027, *3 (citing *In re Colonial Mortg. Bankers Corp.*, 324 F.3d 12, 15 (1 Cir., 2003)).

***IV. Discussion - Federal Claims***

*A. Violations of 42 U.S.C. § 1983*

A suit brought under § 1983 "has two 'essential elements': the defendant must have acted under color of state law, and his or her conduct must have deprived the plaintiff of rights secured by the Constitution or by federal law." *Gagliardi v. Sullivan*, 513 F.3d 301, 306 (1 Cir., 2008)(citation omitted). Additionally, the plaintiff must show "that the [defendant's] conduct was the cause in fact of the alleged deprivation." *Gagliardi*, 513 F.3d at 306 (alteration in original) (further quotation marks omitted). Nemoda contends that the defendants have interfered with three rights protected by the United States Constitution: the right of free speech, the right of due process of law, and the

right of equal protection of the laws. (#2 ¶¶ 48, 50, 52) Each of these contentions will be examined in turn.

1. Count I – Violation of the First Amendment Right of Free Speech

First Amendment jurisprudence makes clear that a citizen must accept limitations on his or her freedom of speech when entering into government service. *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006). The Supreme Court has explained that:

> The Court's decisions...have sought both to promote the individual and societal interests that are served when employees speak as citizens on matters of public concern and to respect the needs of government employers attempting to perform their important public functions. Underlying our cases has been the premise that while the First Amendment invests public employees with certain rights, it does not empower them to constitutionalize the employee grievance.

*Garcetti*, 547 U.S. at 420 (internal citations and quotation marks omitted).

In order to decide whether Nemoda has alleged sufficient facts to make out a claim of retaliatory adverse employment action for the exercise of the right of free speech, it must be determined whether "the well-pleaded facts in the complaint, considered together with the documents annexed to it or fairly incorporated within it... establish that [the plaintiff's] speech was protected

under the First Amendment so as to shield [her] from adverse employment action in retaliation for such speech." *Gagliardi,* 513 F.3d at 306 (footnote omitted).

The First Circuit "has articulated a three-part inquiry" to be employed in making that determination:

> First, a court must determine '"whether the employee spoke as a citizen on a matter of public concern."' *Curran v. Cousins,* 509 F.3d 36, 45 (1st Cir. 2007) (quoting *Garcetti,* 547 U.S. at 418, 126 S.Ct. 1951). Second, the court must 'balance ... the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.' *Id.* at 44 (quoting *Pickering v. Bd. of Educ.,* 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968)) (omission in original). Third, the employee must 'show that the protected expression was a substantial or motivating factor in the adverse employment decision.' *Id.* at 45. If all three parts of the inquiry are resolved in favor of the plaintiff, the employer may still escape liability if it can show that 'it would have reached the same decision even absent the protected conduct.' *Rodriguez–Garcia [v. Miranda-Marin],* 610 F.3d at [756,] 765–66 [1st Cir. 2010] (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)).

*Decotiis v. Whittemore*, 635 F.3d 22, 29-30 (1 Cir., 2011); *Diaz-Bigio v. Santini*, 652 F.3d 45, 51-2 (1 Cir., 2011).

Read in the light most favorable to the plaintiff and drawing all reasonable inferences in her favor, the complaint in this case is devoid of any facts that could make out a plausible violation of Nemoda's right to free speech. First, the complaint makes but one reference to speech that allegedly contributed to the retaliatory adverse employment action taken against her, i.e., the termination of her employment. Specifically, it is alleged that the employment hearing "resulted in a self-serving report substantiating a decision to fire Nemoda as a Supervising Nurse based upon . . . her expression of speech to the donor." (#2 ¶ 22) The letter annexed to the complaint states that "Mercier based his decision [after the hearing] in part on what he claims Ms. Nemoda *said* to the grocery donor. . ."[6] (#2, Letter at 4)(emphasis in original). Neither the allegations of the complaint nor the annexed letter shed light on what the contents of this speech entailed, when this speech occurred, where this speech took place, or any other indicia that could lead to the plausible inference that Nemoda was speaking as a private citizen and the speech touched upon a

6

Although the letter further states that Mercier's reliance on what Nemoda said "implicates her First Amendment guarantees of freedom of expression"(#2, Letter at 4), the Court must "disregard[] statements in the complaint that merely offer 'legal conclusion[s] couched as ...fact [ ]' or '[t]hreadbare recitals of the elements of a cause of action." *Ocasio-Hernández v. Fortuno-Burset*, 640 F.3d 1, 12 (1 Cir., 2011) (quoting *Iqbal*, 129 S.Ct. at 1949)(further quotation marks and citation omitted).

matter of public concern. As recently explained by the First Circuit:

> [I]n order to show an entitlement to relief a complaint must contain enough factual material to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact). Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. In short, an adequate complaint must provide fair notice to the defendants and state a facially plausible legal claim.

*Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 12 (1 Cir., 2011)(internal citations and quotation marks omitted).

The paucity of facts alleged here fail to "raise a right to relief above the speculative level" or to "state a facially plausible legal claim." *Ocasio-Hernandez*, 640 F.3d at 12.

Nemoda argues that whether her conversation with the donor contained speech that concerned public matters and whether she was speaking in her official capacity are questions of fact to be proved at trial and therefore "not the stuff of 12(b)(6) relief." (#6 at 4-5) The plaintiff is mistaken: "[I]t is the judge who decides as a matter of law the issues in the two steps *Garcetti* identifies," those being "whether the speech is by an employee acting as a citizen on a

matter of public concern" and "whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public." *Curran v. Cousins*, 509 F.3d 36, 45 (1 Cir., 2007)(internal citations and quotation marks omitted). Nemoda further contends that the complaint contains enough facts to notify the defendants that a "First Amendment Claim is being made for which relief *could be granted.*"(#6 at 3-4)(emphasis in original). This argument simply does nothing to "raise the right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Merely stating that there was speech, without more, does nothing to transform this possibility into a plausibility. *Twombly*, 550 U.S. at 570.

Lastly Nemoda asserts that "the proper forum for inquiries into the nature of the speech...is through the discovery process, not through a Rule 12(b)(6) Motion to Dismiss."(#6 at 4) This argument is unavailing because

> [i]n order to survive a motion to dismiss, a civil rights plaintiff must point, with at least some minimal specificity, to the rudimentary facts supporting his claim. ...Mere conclusory allegations, standing alone, are not enough; and it is only after stating a valid claim that a plaintiff can insist upon a right to discovery.

*Nestor Colon Medina & Sucesores, Inc. v. Custodio*, 964 F.2d 32, 39(1 Cir., 1992)(citations omitted); *Artuso v. Vertex Pharm., Inc.*, 637 F.3d 1, 8 (1 Cir., 2011)("[A] plaintiff whose complaint does not state an actionable claim has no license to embark on a fishing expedition in an effort to discover a cause of action."); *McCloskey v. Mueller*, 446 F.3d 262, 271 (1 Cir., 2006).

Because the plaintiff has not alleged sufficient facts from which plausibly to infer that the defendants have violated her First Amendment right to free speech, Count I of the complaint must be dismissed.

2. Count II - Violation of Constitutional Right to Due Process of Law

The First Circuit has recently reiterated that "[t]o establish a procedural due process violation, the plaintiff must identify a protected liberty or property interest and allege that the defendants, acting under color of state law, deprived [her] of that interest without constitutionally adequate process." *Gonzalez-Droz v. Gonzalez-Colon*, - F.3d -, 2011 WL 4346673, *8 (1 Cir., Sept. 16, 2011)(internal quotation marks and citation omitted). "In order to maintain a constitutional due process claim arising out of the termination of [her] employment, a public employee must first demonstrate that [s]he has a reasonable expectation, arising out of statute, policy, rule, or contract, that [s]he will continue to be employed." *Wojcik v. Mass. State Lottery Comm'n*, 300 F.3d 92, 101 (1 Cir., 2002)(citing *Perkins v. Bd. of Dirs.*, 686 F.2d 49, 51 (1 Cir.,

1982)); *Roman-Oliveras v. Puerto Rico Elec. Power Authority*, 655 F.3d 43, 47 n.8 (1 Cir., 2011)("government employment does not always confer a property interest and related procedural due process rights."). Further, "[w]hile state law may create property interests, it is a separate question of federal law whether those interests rise to the level of a legitimate claim of entitlement sufficient to trigger procedural due process protections." *Acevedo-Feliciano v. Ruiz-Hernandez*, 447 F.3d 115, 121 (1 Cir., 2006)(citation omitted); *Concepcion Chaparro v. Ruiz-Hernandez*, 607 F.3d 261, 264 (1 Cir.), *cert. denied sub nom., Municipality of Aguala, Puerto Rico v. Acevedo-Oruma,* 131 S.Ct. 665 (2010).

Nemoda has pleaded absolutely no facts in her complaint that pertain to the existence of a protected property interest in her continued employment. Moreover, the plaintiff has conceded that she was a "provisional employee of the Town of Burlington at all relevant time hereto."[7] (#22) As recently noted, "Massachusetts courts have consistently held that the nature of 'provisional' employment under the civil service statutes does not create an entitlement to employment sufficient to create a constitutional property interest." *Ferlisi v.*

---

[7] The defendants first brought Nemoda's status as a provisional employee to the Court's attention at the motion hearing on June 29, 2011. In response to a Court Order, the plaintiff filed a statement in which she concurred that she was a provisional employee of the Town of Burlington at the time of her termination.(#22)

*Galvin,* 787 F. Supp.2d 111, 115 (D. Mass., 2011); *see also Smith v. Commissioner of Mental Retardation*, 409 Mass. 545, 548-49, 567 N.E.2d 924, 926-27 (1991)(holding the plaintiff, a provisional state employee, did not have a constitutionally protected property in her employment); *Dallas v. Commissioner of Public Health*, 1 Mass. App. Ct. 768, 771, 307 N.E.2d 589, 591 (1974)("In the case of a provisional employee, there is no tenure, no right of notice or hearing, no restriction of the power to discharge."(internal quotations and citation omitted)).[8] In the absence of an alleged constitutionally protected property interest in continued employment, the § 1983 claim for deprivation of the right to due process must be dismissed.[9]

---

8

The defendants argue that, in any event, the allegations of the complaint show that the plaintiff was given three weeks notice of a pre-termination hearing at which she was afforded the opportunity to present her side of the story. (#2 ¶ 21 and Letter at 4) Further, Nemoda appealed the denial of her unemployment benefits to the Department of Workforce Development and, after a hearing, had her unemployment benefits reinstated. (#2, Letter at 5) In addition, the plaintiff's discharge is the subject of arbitration proceedings. (#2 ¶ 42)

According to the defendants, these allegations make clear that even if Nemoda had a constitutionally protected property interest in continued employment, she received all the process she was due under the Supreme Court decision in *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 542, 547-48 (1985)("We have described the root requirement of the Due Process Clause as being that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest. This principle requires some kind of a hearing prior to the discharge of an employee who has a constitutionally protected property interest in his employment...all the process that is due is provided by a pretermination opportunity to respond, coupled with post-termination administrative procedures...")(internal citations, quotation marks and footnote omitted)); *Wojcik*, 300 F.3d at 102; *Acevedo-Feliciano*, 447 F.3d at 121.

9

Because Nemoda does not have a constitutionally protected property interest in her employment, any substantive due process claims must also fail. *See Rivera v. Rhode Island*, 402 F.3d 27, 33-4 (1 Cir., 2005) ("In order to establish a substantive due process claim, the plaintiff must first show a deprivation of a protected interest in life, liberty, or property.").

3. Count III - Violation of Constitutional Right to Equal Protection of the Law

In the complaint it is alleged that the "Defendants individually and as part of a conspiracy have under color of authority terminated Nemoda in violation of her Constitutional right of equal protection of the laws, pursuant to the Fourteenth Amendment, and, therefore in violation of 42 U.S.C. § 1983." (#2 ¶ 52) From all that appears, a "class of one" equal protection claim is being advanced, which, by definition, is a "claim in which the plaintiffs do not claim membership in a class or group, but assert that the defendants impermissibly singled them out for unfavorable treatment." *SBT Holdings, LLC v. Town of Westminster,* 547 F.3d 28, 33 (1 Cir., 2008)(citations omitted). Nemoda alleges that she was discharged for having accepted groceries from a town resident, while her three female co-workers who actually received those same groceries from the donor were not disciplined at all. (#2 ¶¶ 23, 24, 25, 38, 39)

The First Circuit has explained that "[a] claim for a class of one equal protection violation is cognizable when - and only when - a plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *SBT Holdings*, 547 F.3d at 34 (internal citations and quotation marks omitted). The Supreme

Court's decision in *Engquist v. Oregon Dep't of Agriculture,* 553 U.S. 591 (2008), however, is fatal to any potential class-of-one equal protection claim Nemoda may be alleging. As the *Engquist* Court stated:

> the class-of-one theory of equal protection – which presupposes that like individuals should be treated alike, and that to treat them differently is to classify them in a way that must survive at least rationality review – is simply a poor fit in the public employment context. To treat employees differently is not to classify them in a way that raises equal protection concerns. Rather, it is simply to exercise the broad discretion that typically characterizes the employer-employee relationship.

*Engquist,* 553 U.S. at 605.

The *Engquist* Court went on to conclude that the "class-of-one theory of equal protection has no application in the public employment context." *Engquist,* 553 U.S. at 607; *see also Jones v. Scotti*, 2010 WL 1711200, *2 (D. Mass., Apr. 26, 2010); *Balboni v. Town of Plymouth*, 2009 WL 3754401, **2-3 (D. Mass., Nov. 6, 2009); *McCann v. City of Lawrence*, 659 F. Supp.2d 243, 250 (D. Mass., 2009).

Nemoda contends that "*Enquist* (sic) only applies in cases where the Plaintiff has no other classification to which they qualify as a member." (#6 at

11) The plaintiff cites no case law in support of her position that the *Engquist* decision should be so limited, nor does she offer further explanation as to why she believes this to be so. Nemoda's argument is not persuasive. Moreover, the plaintiff's rationale that she belongs to a class of women, but that she was the only member of that class punished for having received groceries while the other three similarly situated women, Piccolo, Porter and Manzo, were not disciplined (#6 at 11) is, in effect, a class of one claim.[10]

Following the *Engquist* precedent, Count III of the complaint must be dismissed.

*B. Count V - 42 U.S.C. § 1985(3)*

The First Circuit has held that

> A plaintiff suing under 42 U.S.C. § 1985(3) must allege (1) a conspiracy existed, (2) the defendants had 'a conspiratorial purpose to deprive the plaintiff of the equal protection of the laws,' (3) the defendants committed an 'overt act in furtherance of the conspiracy,' and (4) the plaintiff suffered 'injury to person or property, or a deprivation of a constitutionally protected right.'

---

[10] Clearly Nemoda cannot claim that she was treated differently on account of her gender since her three co-workers were all female. The plaintiff asserts that she "can in fact maintain an equal protection claim against the Town as a pregnant female." (#6 at 11) Whatever the merit of that contention may be, the fact is that Nemoda has made no allegation in complaint that she was treated differently or adversely because she was pregnant.

*Uphoff Figueroa v. Alejandro*, 597 F.3d 423, 432 (1 Cir., 2010)(quoting *Perez-Sanchez v. Pub. Bldg. Auth.*, 531 F.3d 104, 107 (1 Cir., 2008)).[11]

Furthermore, a plaintiff can only recover under this statute when there was "'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.'" *Perez-Sanchez v. Pub. Bldg. Auth.*, 531 F.3d 104, 107 (1 Cir., 2008)(quoting *Griffin v. Breckenridge,* 403 U.S. 88, 102 (1971)).

For purposes of § 1985(3), women are a protected class. *Libertad v. Welch*, 53 F.3d 428, 449 (1 Cir., 1995). However, Nemoda has failed to allege facts sufficient to show that there was a "'class-based, invidiously discriminatory animus'" behind her termination. *Aulson v. Blanchard*, 83 F.3d 1, 3 (1 Cir., 1996)(quoting *Griffin*, 403 U.S. at 102). While Nemoda has not even attempted to define any specific class at all, the gist of the complaint is that she was treated differently than the employees who actually received the groceries from

11 At oral argument, defense counsel suggested that this claim should be dismissed because all of the defendants are employees of the Town of Burlington which is a single entity that cannot conspire with itself. *See Rice v. President and Fellows of Harvard College*, 663 F.2d 336, 338 (1 Cir., 1981)("The fatal defect in this claim is that she has sued only the President and Fellows of Harvard College, which is a single corporate entity and, therefore, unable to conspire with itself in violation of s 1985(3)"), *cert. denied*, 456 U.S. 928 (1982). Here, however, the defendants are named in their individual as well as their official capacities.

the donor.[12] (#2 ¶¶ 25, 39) The difficulty for the plaintiff lies in the fact that she and the three other identified employees, Porter, Manzo and Piccolo, are all members of the *same* protected class, i.e., women. For Nemoda to claim that she was deprived of "equal protection of the laws or of equal privileges and immunities under the laws" there must be, at minimum, others who do not fall within the protected class who were treated favorably. *See Aulson*, 83 F.3d at 5-6. What the plaintiff essentially alleges is that other members of the class to which she belongs were treated more favorably than she was. Such allegations do not implicate, directly or inferentially, any "'***class-based***, invidiously discriminatory animus.'" *Aulson*, 83 F.3d at 3 (further citation omitted; emphasis added).

With Nemoda having failed to allege any facts that could plausibly entitle her to relief under § 1985 (3), Count V of her complaint must be dismissed. *See*, e.g., *Mellen v. Demoulas Super Markets, Inc.*, 2010 WL 1930577, *2 (D. Mass., May 11, 2010)("Because Mellen has made no allegation which even inferentially indicates that the defendants were motivated by any class-based, invidiously discriminatory animus, plaintiff's claim under Section 1985(3) must

12 Again, there is no allegation that Nemoda was treated differently due to her pregnancy.

be dismissed. *See Romero-Barcelo v. Hernandez-Agosto,* 75 F.3d 23, 35 (1st Cir.1996)(conclusory statements are insufficient to support a § 1985(3) claim); accord *Slotnick v. Staviskey,* 560 F.2d 31, 33 (1st Cir.1977).”); *Lumpkin v. Lucey*, 2010 WL 1794400, *6 (D. Mass., May 4, 2010)(same).

*C. Count VIII - 42 U.S.C. § 1986*

A viable § 1986 claim is contingent upon a viable § 1985(3) claim. *See Aldrich v. Town of Brookline,* 2010 WL 1172721, *5 (D. Mass., Mar. 18, 2010) (“The § 1986 claim can be dismissed just as easily since liability under § 1986 is premised on a conspiracy to violate civil rights under § 1985."); *Vega Marrero v. Consorcio Dorado-Manati*, 552 F. Supp.2d 157, 164 (D.P.R., 2007); *Morgan v. Driscoll,* 2002 WL 15695, *5 (D. Mass., Jan. 3, 2002) (“Where a plaintiff has not made out a claim for conspiracy under § 1985, there can be no corresponding claim for failure to prevent that conspiracy under § 1986.”); *Lowden v. William M. Mercer, Inc.*, 903 F. Supp. 212, 218-219 (D. Mass., 1995). As discussed above, Nemoda has not alleged an actionable claim under § 1985(3). Therefore, the plaintiff’s claim pursuant to § 1986 must likewise be dismissed.

***V. Nemoda’s State Claims***

With all of the federal claims in the complaint having been dismissed, the Court declines to exercise supplemental jurisdiction over the remaining state law claims. *See* 28 U.S.C. § 1367(c)(3).

***VI. Conclusion and Order***

For all the reasons stated, it is ORDERED that the Town of Burlington's And Town Officials' Motion To Dismiss Plaintiff's Complaint (#3) be, and the same hereby is, ALLOWED to the extent that the federal claims alleged in Counts I, II, III, VII, and VIII of the complaint are DISMISSED, and otherwise DENIED WITHOUT PREJUDICE. It is FURTHER ORDERED that the state claims alleged in Counts IV, V, VI, IX, X, XI, XII, XIII, XIV, and XV of the complaint be, and the same hereby are, REMANDED to the Superior Court of the Commonwealth of Massachusetts.

Final Judgment shall enter in accordance with these rulings.

/s/ Robert B. Collings

ROBERT B. COLLINGS
United States Magistrate Judge

November 3, 2011.